UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MICHAEL L STANDLEY** and
**JACQUELINE T STANDLEY**,

Debtors.

Case No. **11-62373-12**

## MEMORANDUM of DECISION

At Butte in said District this 22nd day of March, 2013.

In this Chapter 12 bankruptcy, after due notice, a hearing was held January 29, 2013, in Billings on the Motion to Dismiss filed June 22, 2012, by the State Bank of Townsend, and on confirmation of the Debtors' Second Amended Chapter 12 Plan dated January 24, 2013. U.S. Bank, National Association, as custodian/trustee, by and through Zions Agricultural Finance, as attorney in fact ("Zions") joined in State Bank of Townsend's Motion to Dismiss. The Chapter 12 Trustee, James D. Volk of Great Falls, Montana appeared at the hearing; Debtors were represented at the hearing by Gary S. Deschenes of Great Falls, Montana; State Bank of Townsend was represented at the hearing by John H. Grant of Helena, Montana; and Zions Bank was represented at the hearing by Randall C. Lester of Great Falls, Montana. Ted Vanover, Steve Urick, Debtor Michael L. Standley ("Michael"), Debtor Jacqueline T. Standley ("Jacqueline"), J.T. Korkow, Pat Ragen, and Rick Gourley testified. State Bank of Townsend's Exhibits B through Z, AA through NN, OO, and SS through WW, together with Debtors'

Exhibits 1 through 5, and Zions's Exhibits A through G were admitted into evidence.

## JURISDICTION

This Court has jurisdiction of this Chapter 12 bankruptcy case under 28 U.S.C. § 1334(a). This is a core proceeding involving dismissal of this case, and confirmation of a plan under 28 U.S.C. § 157(b)(2)(L). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## BACKGROUND

The background of this case is set forth in a Memorandum of Decision entered by this Court on December 7, 2012, at docket entry no. 130. The parties are familiar with that background and thus, it is not recited here. The Court only includes the facts that are necessary for purposes of this Memorandum of Decision.

Debtors filed a voluntary joint Chapter 12 petition on December 29, 2011, asserting they were "family farmers," as that term is defined at 11 U.S.C. § 101(18), and that they are entitled to proceed under Chapter 12 of the Bankruptcy Code. In schedules filed January 23, 2012, Debtors list real property worth $1,075,000.00, consisting generally of a 900 acre ranch property valued by Debtors at $405,000, the Home Place consisting of approximately 800 acres and valued at $360,000[1], Debtors' personal residence and 17 acres valued at $220,000, and a rental property valued at $90,000[2]. Debtors also list personal property valued at $192,363.83. Debtors;

---

[1] Pursuant to an Order entered December 7, 2012, the Court set the value of the Home Place at $650,000 or $829.35 per acre. The Court's value determination was based upon a finding that the Home Place consisted of roughly 783.75 acres.

[2] On March 11, 2013, the Court entered an Order granting JPMorgan Chase Bank, National Association relief from the automatic stay as to Debtors' rental property. In a Motion to Modify Stay filed February 19, 2013, JPMorgan Chase Bank alleged the total amount owed on

2

liabilities total $1,350,279.72.

Per Schedule I, Jacqueline is employed and earns gross wages of $2,186.92 per month. Debtors also disclose on Schedule I that Michael earns $3,821.66 per month from his farming business, along with $4,531.69 per month from social security, retirement benefits and Federal Employee Retirement System withdrawals. The $3,821.66 of farming income is based upon annual rental house income of $7,088.00, annual rock sales of $20,672.00 and annual hay and pasture sales of $18,100.00[3]. Debtors list on Schedule J average monthly expenses of $7,782.96, which amount includes monthly farming expenses of $2,863.98.

Debtors' first Chapter 12 Plan was filed on March 28, 2012, and was opposed by State Bank of Townsend, Northwest Farm Credit Services, PCA, Bank of America, N.A., and Zions. Debtors' initial Chapter 12 Plan provided that Debtors would pay the sum of $567,891.98 to the Trustee on or before December 31, 2012.

Zions filed Proof of Claim No. 6 on April 11, 2012, asserting a secured claim of $357,343.22. State Bank of Townsend filed Proof of Claim No. 10 on April 26, 2012, asserting a secured claim of $774,645.12. The amount owed to State Bank of Townsend relates to three loans: a real estate and operating loan, a farm operating loan, and a real estate loan. At the January 29, 2013, hearing Ted Vanover of State Bank of Townsend testified that the current balance owed to State Bank of Townsend on that date was $823,950.01, which amount did not

---

such property was $86,050.00, and that Debtors had not made a payment on the obligation owed to JPMorgan Chase Bank since April 1, 2012.

[3] As set forth in a Memorandum of Decision entered December 7, 2012, Debtor raised up to 700 head of cattle on Debtors' land and leased land in 2006 to 2008, but Debtors own no cattle at this time. Debtors sold their cattle and paid the proceeds to State Bank of Townsend.

include attorney's fees, costs, appraisals, etc. The last payment made to State Bank of Townsend on any of the loans was July 8, 2010. State Bank of Townsend's loans are secured by vehicles and real property. State Bank of Townsend's real estate mortgage is junior to a mortgage held by Zions.

After Debtors failed to make the $567,891.98 payment due December 31, 2012, under the terms of their initial Chapter 12 Plan, Debtors filed an amended Chapter 12 plan on January 3, 2013. Debtors' amended plan removed the payment that was originally due December 31, 2012. Debtors filed a Second Amended Chapter 12 Plan on January 24, 2013.

Debtors' Second Amended Chapter 12 Plan provides that Debtors will pay to the Trustee the sum of $367,953.00 on or before December 31, 2013; $87,071.00 on December 31, 2014; and $87,071.00 on December 31, 2015. In the Second Amended Plan, Debtors' list the value of Zions's security as $135,000. Debtors propose to pay such claim over a term of 25 years at 4.75% interest. However, Debtors note, per an asterisk, that they have purchasers for two parcels of the Home Place and Debtors propose to pay all the sales proceeds to Zions Bank. Debtors also propose to sell 130 acres of the "Nelson Place[4]" for $650.00 per acre to an adjoining landowner. As for the latter sale, Debtors filed an amended motion on February 13, 2013, seeking authorization to sell 125 acres of the "Nichols Place" to Standley Bros. for $81,250. In accordance with a Stipulation for Sale of 125 Acres From Nichols Place filed March 20, 2013, the Court entered an Order on March 21, 2013, approving said sale, with all the proceeds from the sale, less customary closing costs, paid directly to Zions.

The Court has also approved the sale of 80 acres of the Home Place to Jeffery Olson for

---

[4] It appears Debtors' reference to the "Nelson Place" is a typographical error.

4

$80,000, with all the proceeds from the sale, less customary closing costs, paid directly to Zions. The sale of the other 80 acres of the Home Place to Todd Standley for $100,000 has not yet been approved. The proceeds from the sale of 125 acres of the Nichols Place and the two 80 acre parcels from the Home Place total $261,250. From the foregoing amount, Debtors will have to pay customary closing costs. The remainder of the proceeds are to be paid to Zions. Although not entirely clear from the record, it appears Debtors agree to surrender the above parcels to Zions if they are not sold by December 31, 2013, and Zions will be left with a $135,000 claim, regardless of what Zions might receive from the sale or surrender of the two 80 acre parcels and the 125 acre piece of the Nichols Place.

Since the confirmation hearing, Debtors have also filed a motion seeking approval of a cattle share lease agreement, and a motion seeking authorization to enter into a gravel purchase contract with Cascade County. In their motion filed February 26, 2013, Debtors request authority to enter into a Contract for Gravel Purchase and Property Access with Cascade County. The purpose of such Contract is to permit Cascade County to enter Debtors' property and extract gravel. Under the Contract, $50,000 is, within 30 days of DEQ permitting, immediately due and payable for the first 5 acres of gravel. State Bank of Townsend opposes Debtors' motion and the matter is scheduled for hearing on April 5, 2013. Testimony at the confirmation hearing indicated that the gravel contract was necessary for the feasibility of Debtors' Plan.

APPLICABLE LAW and DISCUSSION

State Bank of Townsend, in its objection to confirmation filed January 28, 2013, argues Debtors' Plan is not proposed in good faith, that Debtors' Plan does not propose to pay State Bank of Townsend's secured claim in full, that the Plan attempts to eliminate State Bank of

Townsend's security interest in violation of § 1225(a)(5)(B)(ii), that the Plan is not feasible, that the plan unfairly discriminates, that it does not provide for the surrender of the Home Place and the Nichols Place as Debtors' previously agreed, and that the proposed term and interest rate for State Bank of Townsends' obligation is unreasonable. After the confirmation hearing, Zions filed an objection to confirmation of Debtors' Plan. While the Court would generally not consider an objection filed after the hearing, the Court finds that Zions' objection is timely given that Debtors did not file their Second Amended Chapter 12 Plan until January 24, 2013, which was only one week prior to Zions's objection. In its objection, Zions complains about the sale of the three parcels of land, two of which have already been approved.[5] Zions also complains that Debtors' Plan creates unnecessary delay by granting Debtors until December 31, 2013, to sell the three parcels in the event the sales are not concluded by May 1, 2013. Also, Zions objects to Debtors' Plan arguing said Plan does not propose to pay Zions's secured claim in full, that Debtors identify the collateral securing Zions's claim as approximately 900 acres when in fact Zions's claim is secured by approximately 1,693 acres, that the value of Zions's claim is incorrectly stated at $135,000, and that the proposed interest rate and term for repayment of Zions's claim is unreasonable.

## APPLICABLE LAW and DISCUSSION

Confirmation of Chapter 12 plans is governed by 11 U.S.C. § 1225, which requires in

---

[5] As to the third sale, which matter is under advisement, on March 8, 2013, at docket entry no. 215, Zions withdrew its objection to the sale of 80 acres of the Home Place to Todd and Alena Standley.

relevant part[6]:

    (a) Except as provided in subsection (b), the court shall confirm a plan if —

    (3) the plan has been proposed in good faith and not by any means forbidden by law;

* * *

    (5) with respect to each allowed secured claim provided for by the plan–

        (A) the holder of such claim has accepted the plan;

        (B)(I) the plan provides that the holder of such claim retain the lien securing such claim; and

        (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

        (C) the debtor surrenders the property securing such claim to such holder; and

    (6) the debtor will be able to make all payments under the plan and to comply with the plan.

Debtors bear the burden of proving their plan satisfies the above requirements. *In re Perez*, 30 F.3d 1209, 1214 n.5 (9th Cir.1994); *In re Ames*, 973 F.2d 849, 851–52 (10th Cir.1992).

    **a.    11 U.S.C. § 1225(a)(3).**

The Bankruptcy Code implies a requirement of good faith in the filing of any bankruptcy petition. *In re Turner*, 71 B.R. 120 (Bankr. D.Mont. 1987). Similarly, confirmation of a Chapter 12 plan is only permitted if, among other things, "the plan has been proposed in good faith and not by any means forbidden by law[.]" 11 U.S.C. § 1225(a)(3). The standard used in assessing a debtor's good faith depends on the context in which the conduct is being assessed. With respect

---

[6] The Court will not address those provisions of 11 U.S.C. § 1225 that were not raised in an objection by either State Bank of Townsend or Zions.

to confirmation, the United States District Court for the District of Montana in *Traders State Bank of Poplar v. Mann Farms, Inc. (In re Mann Farms, Inc.)*, 7 Mont. B.R. 237 (D.Mont. 1989), discussed certain criteria to consider in deciding whether a plan is proposed in good faith. Many of the criteria discussed in *Mann* do not apply in a case such as this where Debtors are generally proposing to make their Chapter 12 plan payments by liquidating assets. However, "[T]he important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *Id.*, quoting *In re Lewis Indus.*, 75 B.R. 862, 871 (Bankr. D.Mont. 1987).

For reasons the Court will discuss below, the Court finds that Debtor's Second Amended Chapter 12 Plan is not entitled to confirmation. That fact, however, does not mean that Debtors' plan was not proposed in good faith. In sum, State Bank of Townsend's naked assertion that Debtors' Second Amended Chapter 12 Plan is proposed in bad faith is not supported by the record and thus, the objection to confirmation of Debtors' Second Amended Chapter 12 Plan based upon § 1225(a)(3) is overruled.

    **b.**    **11 U.S.C. § 1225(a)(5).**

Subsections (A) and (C) of § 1225(a)(5) do not apply in the instant case because Zions and State Bank of Townsend do not accept Debtors' Second Amended Chapter 12 Plan, and Debtors' Plan does not surrender all the property which secures the claims of Zions and State Bank of Townsend. As a result, § 1225(a)(5)(B)(ii) requires that the value of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim. A leading commentator notes that the "present value requirement of section 1225(a)(5)(B)(ii) is identical to the present value requirement of sections

8

1129(a)(9), 1129(b)(2)(A)(i)(II) and 1325(a)(5)(B)(ii)[,]" and, therefore, "[c]ase law interpreting those provisions is equally applicable to determining present value under section 1225(a)(5)(B)(ii)."  8 COLLIER ON BANKRUPTCY, ¶ 1225.03[4][c] (16th ed.); *see also In re Hungerford*, 19 Mont. B.R. at 113-14 (cases construing cramdown statutes under Chapters 11 and 12 provide valuable interpretation of Chapter 13).

One aspect of determining whether a creditor or creditors are receiving the allowed amount of their claims requires courts to look at a debtor's proposed interest rate.  In Chapter 12 cases this Court has determined the cramdown interest rate by using a formula, starting with a base rate (either the prime rate or the rate on treasury obligations) and adding a "risk factor" based on the risk of default and the nature of the security.  *See In re Fowler*, 903 F.2d 694, 697-98 (9th Cir. 1990); *In re Schaak*, 17 Mont. B.R. 349, 355-57 (Bankr. D. Mont. 1999); *In re Janssen Charolais Ranch, Inc.*, 73 B.R. 125, 127-28 (Bankr. D. Mont. 1987); *Hungerford*, 19 Mont. B.R. at 112-13 (quoting *Janssen Charolais Ranch*).  The Ninth Circuit in *Fowler* approved this Court's use of the formula approach in a Chapter 12 case, but remanded the case for findings regarding the risk of default and nature of the security when it was unable to determine the basis for the bankruptcy court's 0.75 % risk factor or the district court's slightly higher factor.  *Fowler*, 903 F.2d at 698-99.

The United States Supreme Court in a Chapter 13 case, *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-80, 124 S.Ct. 1951, 1961, 158 L.Ed.2d 787 (2004) (plurality opinion), adopted the formula approach over other approaches to establish a cramdown rate.  Together with *Till* and the Ninth Circuit precedent in *Fowler*, this Court considers its long-standing formula approach still good law.

Debtors' Second Amended Chapter 12 Plan provides for an interest rate of 4.75% for Zions and State Bank of Townsend. The Court takes judicial notice that the prime rate of interest has been 3.25 percent for some period of time. The next step requires that a risk factor be added to the prime rate. Risk is heightened to an extent based on the unpredictable nature of the agricultural economy. *Fowler*, 903 F.2d at 697, citing *United States v. Doud*, 869 F.2d 1144, 1145 (8th Cir. 1989). *Fowler* further requires consideration of risk of default and the nature of the security. COLLIER adds that the risk adjustment depends also on the duration of the payment stream and should be high enough to compensate creditor for risk, but not so high as to doom the plan. 8 COLLIER ON BANKRUPTCY, ¶ 1225.03[4][c] (discussing *Till v. SCS Credit Corp.*, 541 U.S. 465, 480, 124 S.Ct. 1951, 1961, 158 L.Ed.2d 787 (2004) (plurality opinion)). COLLIER also discusses cases considering a range of risk factors at ¶ 1225.03[4][c] n.28, and states that although the parties can present evidence of risk factors at a hearing, the evidentiary burden is placed on the creditor to substantiate any risk adjustment over a moderate level. COLLIER, ¶ 1225.03[4][c]; *Till*, 541 U.S. at 484-85. At the confirmation hearing, neither Zions nor State Bank of Townsend offered persuasive evidence regarding a risk adjustment beyond a moderate level, and thus failed their evidentiary burden under *Till*.

Applying the *Fowler* test, as set forth by this Court in *Brummer*, the Court concludes that a risk factor of one and one-half percent is not unreasonable. *See also In re Steinmetz*, 10 Mont. B.R. 150, 158 (Bankr. D.Mont. 1991) ("the prime rate of interest at 8% plus 1% for risk due to probability of non-payment in the future due to non-payment since April, 1990, and insufficient cash flow to fund unsecured claims is the proper market rate of interest."). Accordingly, the Court concludes that Debtors' Second Amended Chapter 12 Plan satisfies the requirements of §

1225(a)(5)(B)(ii) in that it contains an appropriate interest rate for Zions Bank and State Bank of Townsend's secured claims under the formula approach. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) ("In allowing Chapter 13 debtors to retain and use collateral over the objection of secured creditors . . . the Bankruptcy Code has reshaped debtor and creditor rights in marked departure from state law . . . . That change, ordered by federal law, is attended by a direction that courts look to the 'proposed disposition or use' of the collateral in determining its value.").

In addition to a reasonable market rate of interest, § 1225(a)(5)(B) requires that a debtor provide for payments to creditors over a reasonable market term. *In re Steinmetz*, 10 Mont. B.R. at 158. In this case, Debtors' promissory note with Zions, dated May 27, 1999, has a maturity date of July 1, 2014. Debtors' first promissory note with State Bank of Townsend, dated March 3, 2005, was originally intended to mature December 31, 2011; the second, dated May 24, 2007, was originally intended to mature December 31, 2011; and the third, dated May 24, 2007, was drafted to mature on December 31, 2016. Debtors propose to pay Zions's claim at the rate of $9,375.00 per year for a period of 25 years and propose to pay State Bank of Townsend's claim at the rate of $55,694.00 per year for 25 years. The Court finds that such term does not comport with § 1225(a)(5)(B) by providing for payments to creditors over a reasonable market term.

In addition, the Court finds that the drafting of paragraph 2(b) of Debtors' Second Amended Chapter 12 Plan is, as Zions persuasively argues, ambiguous. Debtors' Second Amended Chapter 12 Plan should provide for Zions's claim in the full amount, and then provide that the two 80 acre parcels and 125 acres of the Nichols Place will be sold prior to May 1, 2013, with the proceeds paid directly to Zions. Debtors also need to accurately identify the extent of

Zions's claim. As drafted, Debtors' Second Amended Chapter 12 Plan seems to suggest that Zions' only has a security interest in 900 acres.

    c.    **11 U.S.C. § 1225(a)(6).**

Finally, to be confirmed, Debtors must show that they "will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). The Ninth Circuit B.A.P. has discussed § 1225(a)(6):

> Under this subsection, "[t]he debtor is not required to guarantee the ultimate success of his plan, but only to provide a reasonable assurance that the plan can be effectuated." *In re Hopwood*, 124 B.R. 82, 86 (E.D.Mo.1991). However, this reasonable assurance must rise above "bare agronomic feasibility." *In re Crowley*, 85 B.R. 76, 79 (W.D.Wis.1988). The *Crowley* court stated that
>
>> [s]uch a technical agronomical feasibility determination generally includes a variety of assumptions and the likelihood that these assumptions will occur must be determined by the Court .... Because past behavior and productivity are excellent indicators of future productivity, courts have frequently rejected plans which are premised on highly optimistic projections of increased production.

*Miller v. Nauman (In re Nauman)*, 213 B.R. 355, 358 (9th Cir. BAP 1997).

This Court fashioned the test for feasibility under Chapter 12 on a prior occasion as thus:

> [T]he benefit of the doubt in Chapter 12 cases will be given to farmers, if it appears that a reasonable chance of meeting their payments as projected under a plan [sic].

*In re Rugg*, 8 Mont. B.R. 457 (Bankr. D.Mont. 1990) (quoting *In re Hansen*, 77 B.R. 722 (Bankr. D.N.D. 1987)). *See also Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) ("although we sympathize with the [debtors], we find that the feasibility test is firmly rooted in predictions based on objective fact . . . . [']Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is

12

whether the things which are to be done after confirmation can be done as a practical matter under the facts.'"). Debtors, however, have the burden of proving that their Plan has a reasonable chance of success. *See In re Martin*, 66 B.R. at 926.

In a case such as this, where Debtors do not have sufficient income to fund a confirmable plan, Debtors must propose the liquidation of sufficient assets to payoff all their debts within a reasonable period of time. In the case *sub judice*, the Court has approved the sale one 80 acre parcel and a 125 acre parcel. Debtors have also sought approval of the gravel contract with Cascade County, which contract is necessary for the success of Debtors' Second Amended Chapter 12 Plan. If the sale of the other 80 parcel is approved and if Debtors' contract with Cascade County is approved, Debtors may well have a feasible Chapter 12 Plan. However, those matters are still undecided as of this date.

Debtors' Second Amended Chapter 12 Plan does not satisfy the requirements for confirmation. However, it appears Debtors may finally be taking the steps necessary to formulate a confirmable Chapter 12 plan. Thus, the Court finds it appropriate to hold the pending motion to dismiss in abeyance until after the April 5, 2013, hearing on approval of the gravel contract and until after the Court rules on the pending motion for sale of the other 80 acre parcel. In the interim, the Court will grant Debtors one final opportunity to amend their Chapter 12 plan to comport with this Memorandum of Decision. Debtors shall have until Friday, March 29, 2013, to file their further amended plan, and a hearing on said plan will be held April 5, 2013. If Debtors fail to file a further amended Chapter 12 plan by March 29, 2013, or if confirmation of Debtors' further amended plan is, for any reason, denied, this case will be dismissed without further notice or hearing.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that confirmation of the Debtors' Second Amended Chapter 12 Plan dated January 24, 2013, is DENIED; and on or before **Friday, March 29, 2013**, Debtors shall file a further amended Chapter 12 plan. Any objections to any amended plan shall be filed by April 3, 2013.

IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN that the hearing on State Bank of Townsend's Motion to Dismiss filed June 22, 2012, is continued to, and shall be held in conjunction with a hearing on confirmation of Debtors' further amended Chapter 12 plan, on **Friday, April 5, 2013, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the CHARLES N PRAY COURTROOM, 3RD FLOOR, MISSOURI RIVER COURTHOUSE, 125 CENTRAL AVENUE WEST, GREAT FALLS, MONTANA.

        BY THE COURT

        */s/ Ralph B. Kirscher*
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana